KINGSPORT PRESS, Inc., v. BRIEF ENG-
LISH SYSTEMS, Inc.

In re OWEN.

No. 158.

Circuit Court of Appeals, Second Circuit.

Dec. 7, 1931.

Arthur A. Beaudry, of New York City (O. Ellery Edwards, of New York City, of counsel), for creditor-appellant John P. Owen.

Kaufman & Weitzner, of New York City (Samuel H. Kaufman and Emil Weitzner, both of New York City, of counsel), for complainant-appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

A receiver in equity was appointed in the above cause upon a bill of complaint by Kingsport-Press. The bill set forth that the complainant was a Delaware corporation and that the defendant, Brief English Systems, was a New York corporation indebted to complainant in the sum of $3,310.45 for goods sold and delivered. It alleged that the defendant had obligations outstanding amounting approximately to $50,000, including accounts payable, sums due on promissory notes, and a judgment by John P. Owen against the defendant for $15,000 in the federal court, and it annexed a schedule of assets and liabilities; the former amounting to $94,530.20, and the latter to $49,342.13. It alleged that certain of defendant's creditors were pressing for immediate payment of their claims, were threatening to seize its property by attachment and execution, and that its business should be continued if it was to pay its creditors in full. It further alleged that it conducted a correspondence school of 10,-000 students, and that, if the service of the school was stopped, the sum of $50,000 outstanding in the form of tuition fees would be uncollectible and refunds would have to be made to students who had made advance payments for instruction. Finally it alleged that, if the court appointed a receiver to carry on the defendant's business, the creditors would receive payment of their claims in full, whereas otherwise, and because of present inability to meet its obligations, its assets would be sacrificed.

Upon the foregoing allegations, and upon defendant's answer admitting the allegations of the complaint and joining in the relief prayed for, Judge Coxe appointed Miss Dearborn, who was the president of Brief English Systems, Inc., permanent receiver in equity, with power to continue the business, and enjoined all persons from interfering with the assets of the company.

After the appointment of the receiver, Mr. Beaudry, the solicitor for the appellant, John P. Owen, moved to vacate the order appointing the receiver and granting the injunction and to dismiss the bill. In support of his motion he filed an affiadvit setting forth that Owen had been sued by Brief English Systems, Inc., for alleged infringement of copyrights of certain text-books, and had been granted a decree that the copyrights were infringed; that this court [48 F.(2d) 555] reversed the decree with directions to dismiss the bill, and allowed Owen the sum of $10,000 as a counsel fee, together with other costs amounting to $2,131.70, making a total awarded to him of $12,131.70. The affidavit went on to say that Brief English Systems, Inc., thereupon filed a petition for a rehearing which was denied on April 23, 1931, and thereafter moved the Circuit Court of Appeals to stay its mandate pending the filing of a petition in the United States Supreme Court for a writ of certiorari. It further alleged that Owen's solicitor had requested a bond for the amount of the costs and attorney's fees as a condition of a stay of the mandate pending the determination of the petition for a writ of certiorari, and Mr. Carlos Israels, of the firm of White & Case, who were the solicitors for Brief English Systems, had represented to Judge Manton that Brief English Systems was good for the amount of the costs, whereupon Judge Manton, without requiring security, stayed the mandate pending the application; that the petition for certiorari was denied by the Supreme Court on May 25 (283 U. S. 858, 51 S. Ct. 650, 75 L. Ed. 1464), and thereupon Owen's solicitor served upon White & Case a proposed order and final decree returnable on May 29th, which he was requested by Mr. Israels not to present until the 1st day of June so that the latter might send it to Edgar M. Kitchin, counsel for Brief English Systems in the copyright suit, who was in active charge of the case, for the latter's instructions; that, relying on Israels' assertion before Judge Manton that Brief English Systems was able to respond to any judgment to be entered, Owen's solicitor granted the extension, and the decree was not presented until June 1st; that on June 1st Kitchin caused to be filed in the United States District Court for the Southern District of New York a bill of complaint against Brief English Systems in which he was the complainant and wherein he prayed for the appointment of a receiver alleging that he was a resident of the District of Columbia and that Brief English Systems was incorporated under the laws of the state of New York, that he and Brief English Systems

were citizens of different states, and that the latter was indebted to him in the sum of $14,500 for legal fees for services rendered, and that Benjamin Algase and Krause & Hirsch appeared as attorneys for Kitchin in the suit which was for the appointment of a receiver; that simultaneously an answer was filed by the defendant through Hays, Podell & Shulman, admitting the allegations of the complaint and consenting to the appointment of a receiver; that upon these pleadings Judge Bondy appointed Miss Emma B. Dearborn temporary receiver with an order returnable June 15, 1931, directing the creditors to show cause why the receivership should not be made permanent; that thereupon Owen's solicitor caused to be served upon Algase, Krause & Hirsch and Hays, Podell & Shulman notice of motion that the temporary receivership be vacated and that the permanent receivership should be denied on the ground of lack of diverse citizenship; that on the 15th of June, Owen's solicitor appeared before Judge Bondy, and Krause appeared as solicitor for the complainant Kitchin and assented to the fact that the appointment of the receiver was without jurisdiction because Kitchin was not a resident of a different state from that of the defendant; that thereupon the receivership was vacated and the proceedings were dismissed; that immediately thereafter Krause presented an order to Judge Bondy on behalf of the complainant herein for the appointment of a permanent receiver. Judge Bondy directed that the application be presented to a different judge, and the parties attended before Judge Coxe, who appointed Miss Dearborn receiver on the present bill.

Owen's solicitor, upon his affidavit, of which the foregoing states the substance, moved to dismiss the bill and vacate the receivership because of want of jurisdiction, want of equity, because the bill stated no cause of action and prayed for no final equitable relief, and because the appointment of a receiver was procured by collusion and by circumstances amounting to fraud. Affidavits were filed in opposition by Emma B. Dearborn, Sidney Krause, Samuel H. Kaufman, of the firm of Kaufman & Weitzner, solicitors for the complainant herein, and Leo L. Feinberg (an attorney associated with Kaufman & Weitzner). From these affidavits it appeared in substance that the first suit in which Judge Bondy appointed the receiver was instituted under a mistake of law regarding the right of the District Court to entertain a suit between a resident of the District of Columbia and a citizen of one of the states. It was shown that the appointment of a receiver was necessary in order that the creditors of the defendant might be treated alike and its business might be continued. It moreover was shown that Kingsport Press, Inc., was a corporation which had for some twelve years been a client of Kaufman & Weitzner, solicitors for the complainant in the present suit, and had a valid claim against Brief English Systems for books furnished to it for the latter's course of instruction; that Owen's solicitor, who opposed the application for a receiver before Judge Coxe, insisted that, if the application was denied, he would immediately levy execution upon his judgment; that the application for a receiver was not collusive, but was for the purpose of preventing a levy and in order that all creditors might be treated alike. Miss Dearborn stated that she was advised that, if an application for the appointment of a receiver was made, it would be for the best interest of the corporation and its creditors to consent to the appointment in order to insure the continuance of the business and the treatment of all creditors alike. She further stated that, when the motion was made to vacate the order of Judge Bondy appointing a receiver, she communicated with Kingsport Press, which had already received notice of the receivership; that its manager said, if the existing receivership was terminated, he would have his attorneys file a bill to secure a receiver. Upon the foregoing papers, Judge Coxe denied the motion to vacate the appointment of the receiver and to dismiss the bill, and from this order this appeal has been taken.

The appellant assails the receivership order and the suit in which it was granted principally because the suit was instituted by a simple contract creditor that had not reduced its claim to judgment. It relies on Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 274, 72 L. Ed. 457, in support of this position. In that case a consent decree appointing a chancery receiver in a United States court at the suit of a simple contract creditor was dissolved because the whole proceeding in the federal court was an attempt to prevent a state court, in which a stockholders' bill for the appointment of a receiver had already been filed by a group of minority stockholders, from exercising jurisdiction. The creditor had been persuaded by stockholders of the corporation representing another group to bring the suit in the federal court, had been promised that the suit would

involve no expense to him, and informed that it was for the purpose of preventing the state court from appointing a receiver. The receivership in the United States court was dissolved on the ground that it was a fraud upon the state court. In the course of its opinion the Supreme Court said: "We do not wish what we have said to be taken as a general approval of the appointment of a receiver under the prayer of a bill brought by a simple contract creditor simply because it is consented to at the time by a defendant corporation. The true rule in equity is that under usual circumstances a creditor's bill may not be brought except by a judgment creditor after a return of 'nulla bona' on execution. When a receiver has been thus irregularly appointed on such a bill without objection, and the administration has proceeded to such a point that it would be detrimental to all concerned to discharge the receiver, the receivership has been permitted to continue because not seasonably objected to. Pusey & Jones Co. v. Hanssen, 261 U. S., 491, 497, 500, 43 S. Ct. 454, 67 L. Ed. 763; Re Metropolitan Ry. Receivership, 208 U. S. 90, 109, 111, 28 S. Ct. 219, 52 L. Ed. 403; United States v. Butterworth Corporation, 269 U. S. 504, 513, 46 S. Ct. 179, 70 L. Ed. 380."

While the foregoing remarks were obiter dicta, they were a distinct warning by the Supreme Court against careless practice in the appointment of receivers in equity. In most cases the estate can and should properly be administered in bankruptcy. We do not apprehend, however, that the court meant more than that a creditor's bill for the appointment of a receiver should ordinarily not be brought except by a judgment creditor after a return of "nulla bona" on execution and that in ordinary cases an appointment otherwise, even without objection, would be irregular and should not be sustained unless the administration had proceeded to a point where a discharge of the receiver would be detrimental to all concerned. In other words, we assume that the above dictum did not mean to proscribe the appointment of a receiver in equity for a railroad (which would not be subject to the Bankruptcy Act [11 USCA]) or even for an industrial corporation, where it was made to appear that the corporation was likely to pay its creditors in full and to preserve its business through administration by a receiver, whereas the interests of general creditors would be greatly injured or destroyed if a single creditor were allowed to proceed with execution.

■ There can be no doubt that the federal court obtains jurisdiction where the defendant corporation admits indebtedness and waives its right to have the complainant's claim established at law. In re Metropolitan Railway Receivership, 208 U. S. 90, 28 S. Ct. 219, 52 L. Ed. 403; Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; Superior Oil Corporation v. Matlock (C. C. A.) 47 F.(2d) 993; Hatch v. Morosco (C. C. A.) 50 F.(2d) 138. The question is whether there was a proper case shown for the appointment of the receiver.

■ In the present case there was no abuse of discretion such as arose in Harkin v. Brundage, supra, where the appointment in the federal court interfered with the right of the state court to appoint a receiver and with the constructive possession which the latter court had essentially obtained upon the filing of the state bill. Nor was the complainant here a mere dummy acting without risk of expense. On the contrary, it acted on its own behalf and through its regular attorneys and was vitally interested in not having the assets seized on execution by a judgment creditor who would get his claim paid in full while other creditors might have to go begging. In such circumstances, there can be no reason for holding that the judge abused his discretion in appointing a receiver or that the complainant was guilty of any fraud upon the judgment creditor, Owen, or upon the court. The judge, on the facts presented, adopted the only course that seemed to give the creditors of the defendant a chance to be paid in full or, even if they should not be paid in full, to be treated equally. Upon the bill of complaint filed in the District Court showing that the creditors could be paid in full if the business of the defendant was properly managed, it was for that court to determine as a matter of discretion whether a receiver ought to be appointed. We should not interfere with the exercise of that discretion in the absence of proof of abuse. Sage v. Memphis, etc., Railroad Co., 125 U. S. 361, 8 S. Ct. 887, 31 L. Ed. 694; Folk v. United States (C. C. A.) 233 F. 177; Ward v. Central Trust Co. of Illinois (C. C. A.) 252 F. 127; City Bond & Finance, Inc., v. Grant (C. C. A.) 30 F.(2d) 671.

■ The contention of the appellant that the appointment of the receiver was obtained by fraud is without merit. The first suit was unfounded, but there is not the slightest reason to regard it as fraudulent. Undoubtedly the creditor there, like the complainant here, did not wish to have Owen preferred and his

own claim lost. But his attempt to prevent this by bringing a suit to have the assets sequestrated and applied equally for the benefit of all creditors was not a fraud. His attorneys made a mistake of law, and, believing that a suit by a resident of the District of Columbia against a citizen of New York state involved diverse citizenship, secured the appointment of a receiver. The appointment was inadvertent and the jurisdiction of the District Court was erroneously invoked, but there is no indication of bad faith. Even if there had been bad faith on the part of Kitchin or his attorneys (of which there is not the slightest showing), it could have no effect upon the complainant in this suit, for the latter proceeded in its own right and could properly sue and obtain the relief it sought in order to protect the interests of itself and other creditors similarly situated.

■ The contention that the appointment was obtained by collusion is based on a confusion of ideas. It seems to be thought that it was illegal for the defendant to inform the complainant that Owen was ready to issue execution or to take any steps that would facilitate a receivership. We can discover nothing illegal in this. Owen had no vested right to prevent other creditors from being paid if an administration of the property of the defendant through an equity receivership would produce such a result though after some inconvenience and delay to himself.

■ The statement in the affidavit of Beaudry that Carlos Israels obtained a stay from Judge Manton pending the application for a writ of certiorari by representing that the defendant was able to pay the judgment is irrelevant. We denied a motion made at the last term to punish Israels for contempt based upon this very charge. While the proofs submitted on that motion are not before us here, because it is not a part of the present record, his statements, whatever they may have been, are not connected with the complainant here and can have no bearing on its rights.

■ It is further objected that the receivership was improper because it involved no final relief. This criticism is unfounded. The order appointing the receiver provided for complete administration, and is in customary form containing provisions suited to the existing situation. American Mine Equipment Co. v. Illinois Coal Corporation (C. C. A.) 31 F.(2d) 507.

■ It is vital that such a receivership as this should have the most careful and constant supervision. It should not be the means of continuing an enterprise that does not show evident signs of working out for the benefit of the creditors. Their rights should be preserved at all hazards, and corporate assets applicable to their claims must not be kept at risk in the hope of benefiting stockholders who are in an entirely subordinate position. Even though the expenses of a receivership be very moderate, they are likely to prove so great that a business conducted by a receiver will not be profitable. The statement of the Supreme Court in Harkin v. Brundage, supra, to the effect that receivers should not ordinarily be appointed at the suit of a simple contract creditor should warn any judge, who has found it necessary to appoint a receiver because of special circumstances, to see that the business is liquidated as economically and speedily as possible, unless its continuance is demonstrably beneficial to the corporate creditors.

The order is affirmed.